1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
For the Northern District of California

8

UNITED STATES  DISTRICT COURT

9

Northern District of California

10

San Francisco Division

11

ANNE-STEPHANIE LEROY-GARCIA,

No. C 13-01181 LB

12

Plaintiff,

**ORDER GRANTING DEFENDANTS'**
**MOTION TO DISMISS OR,**
**ALTERNATIVELY, TO TRANSFER**
**ACTION**

v.

13

BRAVE ARTS LICENSING, et al.,

14

Defendants.

[Re: ECF Nos. 10, 21, 24, 30]

15

_____/

16

**INTRODUCTION**

17    Plaintiff Anne-Stephanie Le Roy-Garcia, a visual artist who lives and works in Spain, filed this

18 copyright and trademark infringement case against eight entities and four individuals affiliated with

19 some of the entities.  Complaint, ECF No. 1.[1]  The entity defendants are located or have a principal

20 place of business in either the Central District of California (Brave Arts Licensing, Inc.; Innovating

21 Business Group ("IBG"); My Tribe (a subsidiary of IBG); California Apparel; and HauteLook, Inc.),

22 Texas (Neiman Marcus Group, Inc.), or Washington state (Zulily, Inc.), although the complaint

23 alleges that they all regularly do business in the Northern District of California.  *See id.* at 2-5.  The

24 individual defendants are related to each other and affiliated with entities located in the Central

25 District: Gabriel Guez and Yvette Guez (Yvette is Gabriel's mother and both are affiliated with

26 Brave Arts Licensing, Inc.), Jean Pierre Guez (Jean Pierre is Gabriel's father and is affiliated with

27

28

----

[1]  There were 13 defendants originally, but Plaintiff dismissed Soho Apparel Group
voluntarily, *see* Dismissal, ECF No. 7, leaving 12 defendants.

IBG), and Jonathan Guez (Jonathan is Gabriel's brother and is affiliated with My Tribe).  *See id.*

The defendants move to dismiss or transfer the case for improper venue or alternatively for transfer for *forum non conveniens*.  Motion, ECF No. 10; Joinder (Neiman Marcus and Zulily), ECF No. 21; Joinder (Ideeli), ECF No. 24; Joinder (HauteLook), ECF No. 30.  Upon consideration of the briefs submitted, the arguments of counsel at the August 1, 2013 hearing, and the record in this action, the court **GRANTS** Defendants' motion and **TRANSFERS** this action to the Central District of California.

**STATEMENT**

**I.  THE PARTIES**

According to the complaint, Plaintiff "is a prominent visual artist who was born and now lives and creates her works in Almeria, Spain."  Complaint, ECF No. 1 ¶ 2.

Defendant Brave Arts is a California limited liability company and is located in the Central District of California.  *Id.* ¶ 3.  Brave Arts regularly does business with customers located in the Northern District of California.  *Id.*  Defendants Gabriel Guez and Yvette Guez are individuals who reside in the Central District of California and are owners of Brave Arts.  *Id.* ¶¶ 4-5; Gabriel Guez Declaration, ECF No. 10-2 ¶ 2; *see also* Motion, ECF No. 10 at 8 (stating that Gabriel Guez and Yvette Guez reside in Los Angeles County); *but see* Jean Pierre Guez Declaration, ECF No. 10-3 ¶¶ 2 (stating that Yvette Guez is his ex-wife and that she has never resided in the United States).[2] Brave Arts, Gabriel Guez, and Yvette Guez collectively will be referred to as the "Brave Arts Defendants."

Defendant IBG is a California corporation and is located in the Central District of California.  Complaint, ECF No. 1 ¶ 7.  IBG regularly does business with customers located in the Northern

---

[2] When deciding a challenge to venue, the pleadings need not be accepted as true, and the court may consider facts outside of the pleadings.  *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).  But the court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party.  *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138-39 (9th Cir. 2004).  Here, Plaintiff alleges that Yvette Guez resides in the Central District of California, and Defendants have made conflicting statements about this issue.  Thus, the court resolves this conflict in favor of Plaintiff, and for purposes of this order, considers Yvette Guez to reside in Central District of California.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   District of California.  *Id.*  Defendant Jean Pierre Guez is an individual who resides in the Central

2   District of California and is an owner of IBG.  *Id.* ¶ 8; Jean Piere Guez Declaration, ECF No. 10-3 ¶

3   1.  Defendant My Tribe is a business entity that operates as a subsidiary of IBG and is located in the

4   Central District of California.  Complaint, ECF No. 1 ¶ 9.  My Tribe regularly does business with

5   customers located in the Northern District of California.  *Id.*  Defendant Jonathan Guez is an

6   individual who resides in the Central District of California and exercises management and control

7   over the business activities of My Tribe.  *Id.* ¶ 10; Jean Pierre Guez Declaration, ECF No. 10-3 ¶ 4

8   (stating that Jonathan Guez resides in Los Angeles County).  IBG, Jean Pierre Guez, My Tribe, and

9   Jonathan Guez collectively will be referred to as the "IBG Defendants."

10       Defendant California Apparel is a California corporation and is located in the Central District of

11   California.  Complaint, ECF No. 1 ¶ 12.  California Apparel regularly does business with customers

12   located in the Northern District of California.  *Id.*

13       Defendant Ideeli is a Delaware corporation and is located in the Southern District of New York.

14   *Id.* ¶ 14.  Defendant Neiman Marcus is a Delaware corporation and is located in the Northern

15   District of Texas.  *Id.* ¶ 15.  Defendant HauteLook is a Delaware corporation and is located in the

16   Central District of California.  *Id.* ¶ 16.  Defendant Zulily is a Delaware corporation and is located in

17   the Western District of Washington.  *Id.* ¶ 17.  Ideeli, Neiman Marcus, HauteLook, and Zulily

18   regularly do business with customers located in the Northern District of California.  *Id.* ¶¶ 14-17.

19   Ideeli, Neiman Marcus, HauteLook, and Zulily collectively will be referred to as the "Retail

20   Defendants."

21   **II.  THE PARTIES' PRIOR RELATIONSHIP**

22       Plaintiff creates works in various media, including original paintings, drawings, and prints.  *Id.* ¶

23   23.  She has developed a unique artistic style which she calls "L'art Nouveau Andaluz."  *Id.* ¶ 24.

24   Since at least as early as 1998, she adopted and has continuously used the artist's name

25   "ALMERIANE" as her pseudonym and designation of source for her artworks (the "ALMERIANE

26   Mark").  *Id.*  She signs her works using ALMERIANE in a stylized form comprising a reproduction

27   of her handwritten signature (the "ALMERIANE Stylized Mark").  *Id.*, Exh. 1.  Her artworks have

28   been exhibited and sold worldwide, including in the United States, under the ALMERIANE

pseudonym, word mark, and ALMERIANE Stylized Mark since at least as early as 1998.  *Id.*  The

ALMERIANE Mark and the ALMERIANE Sty¥zed Mark collectively will be referred to as the

"ALMERIANE Marks."  *Id.*

Plaintiff is the sole owner of all rights, including copyrights, in her L'Art Nouveau Andaluz

works of all rights, including trade name and trademark rights, in the ALMERIANE Marks.  *Id.*

¶ 26.  In or about April 2011, Defendant Gabriel Guez, who represented to Plaintiff that he was

experienced and successful in the business of the sourcing, manufacture, design, sale and

distribution of garments and that he routinely sourced artwork for such purposes, approached

Plaintiff about a licensing deal.  *Id.* ¶ 27.  Plaintiff and Gabriel Guez entered into a business

relationship and executed three documents: (1) a "Manager & Representation Agreement"; (2) a

"Trademark Authorization Consent"; and (3) a "Copyright/Worldwide Master License Agreement."

*Id.* ¶¶ 28, 31, Exh. 3 (the three agreements).  Under these agreements, "[Gabriel] Guez, individually,

was granted, for an initial term of 7 years, a non-exclusive license to sell Plaintiff's original artwork

for a 10% commission payable to [Gabriel] Guez, and an exclusive license as Plaintiff's 'Worldwide

Master Licensee' to create and market prints and merchandise featuring Plaintiffs 'L' Art Nouveau

Andaluz' paintings under the ALMERIANE Marks (the 'Licensed Products'), for payment on a

quarterly basis off 8% royalty to Plaintiff, and to sublicense manufacturing and distribution of the

Licensed Products, for payment of a 6% royalty to Plaintiff, subject to certain terms and conditions."

*Id.* ¶ 32.  "Those explicit conditions, inter alia, required [Gabriel] Guez to obtain Plaintiff's prior

written approval before assigning any of his rights to another party; to obtain Plaintiff's pre-approval

prior to marketing each Licensed Product and promotional materials therefor; to disclose to Plaintiff

all sublicenses; and to account for and timely pay all commissions and royalties due to Plaintiff."  *Id.*

The agreements "also authorized [Gabiel] Guez, individually, to use and register, as Plaintiffs agent

and on Plaintiff's behalf, the ALMERIANE mark in connection with the Licensed Products."  *Id.*

The agreements explicitly provide for termination immediately by Plaintiff upon [Gabriel] Guez's

breach of the limitations on transfer of his rights, and upon sixty days' notice upon [Gabriel] Guez's

breach of his pre-approval and payment obligations; that upon termination all rights revert to

Plaintiff; and the prevailing party in any actions to enforce the provisions of the [a]greement[s] shall

1   recover attorneys' fees." *Id.* ¶ 33.

2       Plaintiff alleges that soon after the agreements were executed, if not before, the Brave Arts

3   Defendants and the IBG Defendants began arranging for the manufacture of Licensed Products,

4   organizing promotional events including participation in trade shows, taking orders, and distributing

5   Licensed Products to wholesale and retail customers across the United States, including at least the

6   following retailers within the Northern District of California: Emily Lee in San Francisco,

7   California; Channel 910 in San Francisco, California; New Threads in Corte Madera, California;

8   Daisy in St. Helena, California; Forget Me Not in Aptos, California; Safari in Mendocino, California

9   and other online vendors. *Id.* ¶ 34.

10      Plaintiff provided Gabriel Guez with hundreds of high definition images of her artwork for use

11  on Licensed Products. *Id.* ¶ 35.  The Brave Arts Defendants had access to these images.  *Id.*

12      Plaintiff alleges that, in late 2011, the Brave Arts Defendants (including Gabriel Guez) and the

13  IBG Defendants then began violating the agreements by:

14      •   assigning Gabriel Guez's personal contract rights to others;

15      •   violating the agreements' sublicensing provisions;

16      •   failing to obtain Plaintiff's prior approval before displaying and offering for sale items

17          featuring Plaintiff's artwork and failing to meet Plaintiff's quality control requirements;

18      •   failing to promote in good faith the ALMERIANE brand;

19      •   failing to pay the full amount due on the sale of original artwork;

20      •   failing to adequately and accurately report merchandise royalties;

21      •   failing to pay merchandise royalties;

22      •   selling Licensed Products at severely discounted prices;

23      •   attempting to register the ALMERIANE Stylized Mark in Brave Arts's name.

24  *Id.* ¶¶ 37-56.

25      In late May 2012, Plaintiff told Gabriel Guez that she wanted to terminate the agreements.  *Id.* ¶

26  47.  In early June 2012, Gabriel Guez asserted that Plaintiff was entitled to unilaterally terminate the

27  agreements and that the agreements still were in force. *Id.* ¶ 48, Exh. 6.  Plaintiff retained counsel,

28  who sent Gabriel Guez a letter that formally notified him that Plaintiff intended to terminate the

1  agreements because of the above-described breaches and provided him with an opportunity to cure.

2  *Id.* ¶ 55.

3  **III.  THE BRAVE ARTS DEFENDANTS' STATE COURT ACTION**

4      On August 31, 2012, the Brave Arts Defendants responded to Plaintiff's counsel's letter by filing

5  a lawsuit against Plaintiff in Los Angeles County Superior Court.  *Id.* ¶ 57, Exh. 10 (State Court

6  Complaint).  This action apparently is for breach of contract and related claims.  *See* Motion, ECF

7  No. 10 at 3-4; Gabriel Guez Declaration, ECF No. 10-2 ¶ 17.  To date, the Brave Arts Defendants

8  have not served Plaintiff with the State Court Complaint and summons.  Rhodes Declaration, ECF

9  No. 17-1 ¶¶ 2-3.

10  **IV.  PLAINTIFF'S FEDERAL ACTION**

11      On March 15, 2013, Plaintiff filed the instant copyright and trademark infringement case against

12  Defendants.  Complaint, ECF No. 1.  She brings claims for (1) copyright infringement in violation of

13  17 U.S.C. § 101 et seq., (2) trademark infringement, false designation of origin, and unfair

14  competition in violation of 15 U.S.C. § 1125, (3) common law trademark infringement, (4) unfair

15  and fraudulent business practices in violation of the California's Unfair Competition Law ("UCL"),

16  Cal. Bus. & Prof. Code § 17200 et seq., (5) fraud and deceit, (6) conversion, and (7) filing a false

17  federal trademark application in violation of 15 U.S.C. §§ 1119 and 1125.  *See generally* Complaint,

18  ECF No. 1.  Aside from being based on the above-described allegations, Plaintiff also alleges that,

19  even after she terminated the agreements, the Brave Arts Defendants, the IBG Defendants, and

20  California Apparel "have continued, without Plaintiff's authorization or consent, to develop,

21  manufacture, display, promote, distribute and sell products bearing Plaintiff's artwork and/or the

22  ALMERIANE Marks (the "ALMERIANE Products"), and/or have distributed ALMERIANE

23  Products to retailers including . . . [the Retail Defendants], who have sold the ALMERIANE

24  Products to the public."  *Id.* ¶ 64.  She further alleges that "[s]ales of ALMERIANE Products by

25  Defendants have continued at severely discounted prices," and that "Defendants continue to use the

26  and likeness of Plaintiff to promote sales of the ALMERIANE Products."  *Id.* ¶ 65, Exh. 13.

27      Defendants move to dismiss Plaintiff's case for improper venue under 28 U.S.C. § 1406(a) or,

28  alternatively, to transfer it to the United States District Court for the Central District of California for

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1  the convenience of the parties under 28 U.S.C. § 1404(a).  Motion, ECF No. 10; Joinder (Neiman

2  Marcus and Zulily), ECF No. 21; Joinder (Ideeli), ECF No. 24; Joinder (HauteLook), ECF No. 30.[3]

3  Plaintiff opposes the motion.  Opposition, ECF No. 17.  The court held a hearing on August 1, 2013.

**ANALYSIS**

**I.  LEGAL STANDARD**

A party may challenge venue in district court under two statutes:  28 U.S.C. § 1406(a) for

improper venue, and 28 U.S.C. § 1404(a) for the convenience of parties and witnesses and in the

interest of justice.

**A.  28 U.S.C. § 1406(a)**

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss a case for

improper venue.  If venue is improper, the court may either dismiss the case without prejudice, or, if

it is in the "interest of justice," may transfer the case "to any district or division in which it could

have been brought."  28 U.S.C. § 1406(a); *In re Hall, Bayoutree Assoc., Ltd.*, 939 F.2d 802, 804 (9th

Cir. 1991) (if a court decides to dismiss a case for improper venue, dismissal must be without

prejudice).  Ordinarily, the interest of justice requires transferring the case to the proper venue rather

than dismissing the case.  *See Baeta v. Sonchik*, 273 F.3d 1261, 1264-65 (9th Cir. 2001) (quotations

and citations omitted).  After a defendant challenges the venue, it is the plaintiff's burden to show

that venue is proper.  *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th

Cir. 1979).  In the context of a motion under Rule 12(b)(3), the court need not accept as true all

allegations in the complaint, but may consider facts outside the pleadings.  *See Murphy v. Schneider

Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004) (citations omitted).  However, the court "is

obligated to draw all reasonable inferences in favor of the non-moving party and resolve all factual

conflicts in favor of the non-moving party."  *Id.* at 1138.

**B.  28 U.S.C. § 1404(a)**

28 U.S.C. § 1404(a) states: "For the convenience of parties and witnesses, in the interest of

justice, a district court may transfer any civil action to any other district or division where it might

---

[3] Plaintiff and all remaining Defendants have consented to the undersigned's jurisdiction. Consents, ECF Nos. 12, 13, 22, 26, 31.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

have been brought." Although Congress drafted § 1404(a) in accordance with the doctrine of *forum non conveniens*, it was intended to be a revision rather than a codification of the common law. *Piper Aircraft v. Reyno*, 454 U.S. 235, 253 (1981); *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). Thus, a § 1404(a) transfer is available "upon a lesser showing of inconvenience" than that required for a *forum non conveniens* dismissal. *Norwood*, 349 U.S. at 32.

The burden is upon the moving party to show that transfer is appropriate. *Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *see also Los Angeles Memorial Coliseum Comm. v. National Football League*, 89 F.R.D. 497, 499 (C.D. Cal. 1981) *aff'd*, 726 F.2d 1381, 1399 (9th Cir. 1984). Nonetheless, the district court has broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)); *see Westinghouse Elec. Corp. v. Weigel*, 426 F.2d 1356, 1358 (9th Cir. 1970).

An action may be transferred to another court if: (1) that court is one where the action might have been brought; (2) the transfer serves the convenience of the parties; and (3) the transfer will promote the interests of justice. *E & J Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994) (citing 28 U.S.C. § 1404(a)). The Ninth Circuit has identified numerous additional factors a court may consider in determining whether a change of venue should be granted under § 1404(a):

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising Inc.*, 211 F.3d at 498–99. Courts may also consider, "the administrative difficulties flowing from court congestion and [the] local interest in having localized controversies decided at home." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

Generally, the court affords the plaintiff's choice of forum great weight. *Lou v. Belzberg*, 834

F.2d 730, 739 (9th Cir. 1987) *cert. denied*, 485 U.S. 993 (1988).  But when judging the weight to be given to plaintiff's choice of forum, consideration must be given to the respective parties' contact with the chosen forum.  *Id.*  "If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter," the plaintiff's choice "is entitled only minimal consideration."  *Id.*  Moreover, when a plaintiff brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight.  *Id.*

## II. APPLICATION

### A.  Venue Is Improper and Must be Transferred under 28 U.S.C. § 1406(a)

It is Plaintiff's burden to show that venue is proper.  *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d at 496; *Activision Pub. Inc. v. Activision TV Inc.*, No. 2:12-CV-8964-SVW-JEM, 2013 WL 1003546, at *2 (C.D. Cal. Feb. 25, 2013) (citation omitted).  "When there are multiple parties and/or multiple claims in an action, the plaintiff must establish that venue is proper <u>as to each defendant and as to each claim</u>."  *Multimin USA, Inc. v. Walco International, Inc.*, No. CV F 06-0226 AWI SMS, 2006 WL 1046964, *2 (E.D. Cal. Apr. 11, 2006) (citations omitted) (emphasis added); *see Adobe Sys., Inc. v. Childers*, No. 5:10-cv-03571-JF/HRL, 2011 WL 566812, at *7 (N.D. Cal. Feb. 14, 2011); Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL § 4:7 (The Rutter Group 2013) ("Ordinarily, venue must be proper as to *each* defendant joined in the action.  And, where separate claims are joined, venue must be proper as to each such claim.") (citing *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996); *DeHaemers v. Wynne*, 522 F. Supp. 2d 240, 247 (D.D.C. 2007)) (emphasis in original).

In her complaint, Plaintiff alleged that venue in the Northern District of California is proper under 28 U.S.C. §§ 1391(b), 1392, and 1400(a).  Complaint, ECF No. 1 ¶ 21.  In her opposition, though, she acknowledges that 28 U.S.C. § 1391(b)(1) and (b)(3) do not apply here and 28 U.S.C. § 1392 has been repealed.  Opposition, ECF No. 17 at 16 n.3; *see also id.* at 9-17 (arguing only that venue is proper under 28 U.S.C. §§ 1391(b)(2) and 1400(a)).  Accordingly, Plaintiff must show that venue is proper under 28 U.S.C. §§ 1391(b)(2) and 1400(a).  Because Plaintiff's copyright claim is subject to a specific venue statute (28 U.S.C. § 1400(a)), while her other claims are subject to the general venue statute (28 U.S.C. § 1391(b)), the court examines whether this venue is proper for

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Plaintiff's copyright claim first.

2        *1.  28 U.S.C. § 1400(a)*

3        Venue for claims asserted under the Copyright Act, such as Plaintiff's first claim for copyright

4    infringement, are governed by a specific venue statute, 28 U.S.C. § 1400(a), which provides, "Civil

5    actions, suits, or proceedings arising under any Act of Congress relating to copyrights . . . may be

6    instituted in the district in which the defendant or his agent resides or may be found."  *See Brackett*

7    *v. Hilton Hotels, Inc.*, 619 F. Supp. 2d 810, 815 (N.D. Cal. 2008) (Alsup, J.) (applying 28 U.S.C. §

8    1400(a) to determine whether the Northern District of California was a proper venue for plaintiff's

9    copyright claim); *Goldberg v. Cameron*, 482 F. Supp. 1136, 1143 (N.D. Cal. 2007) (Whyte, J.)

10   ("The venue of suits for infringement of copyright is not determined by the general provision

11   governing suits in the federal district courts, rather by the venue provision of the Copyright Act.")

12   (citing 28 U.S.C. § 1400(a); *Lumiere v. Mae Edna Wilder, Inc.*, 261 U.S. 174, 176 (1923)).

13       *(i)  The Individual Defendants*

14       The court first considers the Individual Defendants.  It is well established that an individual

15   defendant "resides" for venue purposes in the district of his residence or legal domicile.  *See* 17

16   Moore's Federal Practice 3d 110.03 (2013) (for purposes of all venue statutes, a natural person is

17   deemed to reside in the judicial district in which that person is domiciled) (citations omitted).  And

18   the Ninth Circuit also has interpreted 28 U.S.C. § 1400(a) "to allow venue 'in any judicial district in

19   which the defendant would be amenable to personal jurisdiction if the district were a separate

20   state.'"  *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)

21   (quoting *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 289

22   (9th Cir. 1997) (overruled on other grounds)).  It is undisputed that the Individual Defendants do not

23   "reside" in the Northern District of California, so Plaintiff must show that they are subject to

24   personal jurisdiction in it.  *See Brackett*, 619 F. Supp. 2d at 815 (analyzing defendants' contacts with

25   the Northern District of California).

26       Where there is no applicable federal statute governing personal jurisdiction, the district court

27   applies the law of the state in which the district court sits.  *See* Fed. R. Civ. Pro. 4(k)(1)(A);

28   *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).  Because California's

UNITED STATES DISTRICT COURT
For the Northern District of California

long-arm jurisdictional statute is coextensive with federal due process requirements, the

jurisdictional analyses under state law and federal due process are the same.  *Panavision*, 141 F.3d at

1320; Cal. Code Civ. P. § 410.10 ("A court of this state may exercise jurisdiction on any basis not

inconsistent with the Constitution of this state or of the United States").  A court may exercise

personal jurisdiction over a defendant consistent with due process only if he or she has "certain

minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.'"  *International Shoe Co. v. Washington*, 326

U.S. 310, 316 (1945).  Again, for venue purposes, the relevant forum is the Northern District of

California.  *See Brayton Purcell*, 606 F.3d at 1128.

    "Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that

the defendant can be deemed to be 'present' in that forum for all purposes, a forum may exercise

only 'specific' jurisdiction—that is, jurisdiction based on the relationship between the defendant's

forum contacts and the plaintiff's claim." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et*

*L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).  Here, Plaintiff argues that "Defendants are

clearly subject to specific jurisdiction in the Northern District of California" and notes that the

existence of "[g]eneral jurisdiction also seems likely," but showing it "may require additional

discovery."[4]  Opposition, ECF No. 17 at 10.  In light of Plaintiff's statement, the court will look first

to whether specific jurisdiction exists over the Individual Defendants.

    The Ninth Circuit analyzes specific jurisdiction according to a three-prong test: (1) the

nonresident defendant must purposefully direct his activities at the forum state or purposefully avail

himself of the benefits and protections of the laws of the forum state, (2) the claim must be one

which arises out of or relates to the defendant's forum-related activities, and (3) the exercise of

personal jurisdiction must be reasonable.  *Yahoo!*, 433 F.3d at 1205-1206 (citing *Schwarzenegger v.*

*Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).  Plaintiff bears the burden of satisfying

the first two prongs.  *Mavrix Photo v. Brand Techs.*, 647 F.3d 1218, 1228 (9th Cir. 2011).  If

---

    [4] General jurisdiction exists when a defendant is domiciled in the forum state or his activities
there are "substantial" or "continuous and systematic."  *Helicopteros Nacionales de Colombia, S.A.*
*v. Hall*, 466 U.S. 408, 414-16 (1984).

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Plaintiff succeeds, the burden shifts to Defendants to present a "'compelling case' that the exercise

2   of jurisdiction would not be reasonable." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

3   476-78 (1985)).

4       "The first prong is satisfied by either purposeful availment or purposeful direction." *Brayton*

5   *Purcell*, 606 F.3d at 1128.  "A purposeful direction analysis . . . is most often used in suits sounding

6   in tort." *Id.*  Plaintiff's copyright claim sounds in tort, so the court applies the purposeful direction

7   analysis here.  *See PokitDok, Inc. v. Martin*, No. C 12–3947 SI, 2012 WL 5425615, at *3 (N.D. Cal.

8   Nov. 6, 2012) (Illston, J.) (applying purposeful direction analysis to copyright claim); *Lang v.*

9   *Morris*, 823 F. Supp. 2d 966, 969 (N.D. Cal. 2011) (Chen, J.) (same).

10      The Ninth Circuit evaluates purposeful direction using the tripartite "effects" test set forth in the

11  Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984).  *See Schwarzenegger*, 374 F.3d

12  at 803.  Under this test, "the defendant allegedly must have (1) committed an intentional act, (2)

13  expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered

14  in the forum state." *Yahoo!*, 433 F.3d at 1206 (internal quotation marks omitted).

15      In her opposition, Plaintiff argues that "Defendants" have purposefully directed their activities at

16  the Northern District of California because they "have admitted that they extensively advertise their

17  products, including allegedly unauthorized ALMERIANE products, at national trade shows for sales

18  to retailers across the country, and moreover, that such solicitations have resulted in actual sales of

19  ALMERIANE products to customers in the Northern District [of California]."  Opposition, ECF No.

20  17 at 11.  By "Defendants" it appears Plaintiff means Brave Arts, IBG, My Tribe, and California

21  Apparel, because, at the beginning of her discussion of specific jurisdiction, she states simply and

22  without citation to legal authority: "The analysis applies equally to the individual Defendants, who

23  are all shareholders and/or officers of the corporate Defendants and are presumed to have directed

24  and controlled their activities." *Id.* at n.2.

25      But contrary to Plaintiff's statement, the analysis does not simply "apply" to the Individual

26  Defendants because they are associated with Brave Arts, IBG, My Tribe, and/or California Apparel.

27  "Under the fiduciary shield doctrine, a person's mere association with a corporation that causes

28  injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the

person." *Davis v. Metro. Prod., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974), and *United States v. Montreal Trust Co.*, 358 F.2d 239 (2d Cir. 1966)).  Despite the continued citation of this doctrine by numerous courts, it appears that the doctrine—in its stated form at least—appears to have been rejected by the United Supreme Court's decisions in *Calder v. Jones* and *Keeton v. Hustler Magazine, Inc.* regarding the specific personal jurisdiction analysis.  *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984) ("Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there.  On the other hand, their status as employees does not somehow insulate them from jurisdiction.  Each defendant's contacts with the forum State must be assessed individually."); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781, n.13 (1984) ("[W]e today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity"); *see also Kukui Gardens Corp. v. Holco Capital Group, Inc.*, 664 F. Supp. 2d 1103, 1110 (D. Haw. 2008) (questioning the continuing viability of the fiduciary shield doctrine).[5]  "Instead, the proper inquiry is to look specifically at the minimum contacts of the individual regardless of whether that individual was acting within his or her official capacity." *Kukui Gardens*, 664 F. Supp. 2d at 1110 (citing *Calder*, 465 U.S. at 789-90); *see Rimes v. Noteware Dev. LLC*, No. C-09-0281 EMC, 2010 WL 3069250, at *2 (N.D. Cal. Aug. 4, 2010) (Chen, J.) ("[A]s long as [an individual defendant] has had sufficient contacts with California, whether in an official or personal capacity, then there is personal jurisdiction.").

Cases where specific personal jurisdiction was found to exist over individual corporate officer defendants typically have involved situations where the individual defendant was the "guiding spirit" behind the wrongful conduct . . . or the "central figure" in the challenged corporate activity. *See Allstar Mktg. Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1120 (C.D. Cal.

---

[5] Judges in this Court—including the undersigned—also have questioned the continuing viability of the doctrine.  *See, e.g., Salesbrain, Inc. v. AngelVision Tech.*, No. C 12–05026 LB, 2013 WL 1191236, at *7 (N.D. Cal. Mar. 21, 2013) (Beeler, J.); *Rimes v. Noteware Dev. LLC*, No. C-09-0281 EMC, 2010 WL 3069250, at *2 (N.D. Cal. Aug. 4, 2010) (Chen, J.); *Blinglet, Inc. v. Amber Alert Safety Centers, Inc.*, No. C 09-05156 SI, 2010 WL 532388, at *1 n.1 (N.D. Cal. Feb. 6, 2010) (Illston, J.).

UNITED STATES DISTRICT COURT
For the Northern District of California

2009) (collecting cases); *Matsunoki Group, Inc. v. Timberwork Oregon, Inc.*, No. C 08-04078 CW, 2009 WL 1033818, at *3-4 (N.D. Cal. Apr. 16, 2009) (Wilken, J.) (same).[6]  Accordingly, "[c]ourts have thus found a corporate officer's contacts on behalf of a corporation sufficient to subject the officer to personal jurisdiction where the officer 'is a primary participant in the alleged wrongdoing' or 'had control of, and direct participation in the alleged activities.'"  *Id.* (quoting *Winery v. Graham*, No. C 06-3618 MHP, 2007 WL 963252, at *5 (N.D. Cal. Mar. 29, 2007) (Patel, J.) (internal quotation marks and citations omitted)).[7]  "Absent such participation and control, a defendant's limited contacts with the forum state will not suffice to establish personal jurisdiction where such contacts arise only by virtue of the individual's status as an employee of a company." *Winery*, 2007 WL 963252, at *5 (citing *Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104, 1112 (C.D. Cal. 1999)).

Here, Plaintiff's allegations about the Individual Defendants' personal contacts with the Northern District of California are lacking, and her allegations about the conduct of the "Brave Arts Defendants" and the "IBG Defendants" are too vague and conclusory, to suggest that each of the Individual Defendants has a degree of participation or control sufficient to exercise specific jurisdiction over them.  For example, aside from alleging that Yvette Guez is an owner of Brave Arts, Complaint, ECF No. 1 ¶¶ 5, 50, Plaintiff does not allege that Yvette Guez did anything at all, *see generally id.*, and Plaintiff's allegations that the undifferentiated "Brave Arts Defendants" and "IBG Defendants" solicited and took orders from customers in the Northern District of California does nothing to show that she was a "central figure" or "primary participant" in the alleged

---

[6] Courts also find that where a corporation is the alter ego of its owners, specific personal jurisdiction over the corporation supports specific personal jurisdiction over the owners.  *See Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984); *see also Richmond Tech., Inc. v. Aumtech Bus. Solutions*, No. 11-CV-02460-LHK, 2011 WL 2607158, at *6 (N.D. Cal. July 1, 2011) (citing Flynt Distributing for this point).  Here, Plaintiffs do not assert that Brave Arts, IBG, or My Tribe are the alter egos of any Individual Defendant.

[7] The court notes that the *Allstar* opinion cites to *Matsunoki Group, Inc. v. Timberwork Oregon, Inc.*, No. C 08-04078 CW, 2009 WL 1033818, at *3-4 (N.D. Cal. Apr. 16, 2009) for this quotation, but the quotation actually appears in *Winery v. Graham*, No. C 06-3618 MHP, 2007 WL 963252, at *5 (N.D. Cal. Mar. 29, 2007), as the court cited above.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   infringing conduct.  The same is true for Jean Pierre Guez and Jonathan Guez.  Aside from alleging

2   that Jean Pierre is an "owner" of IBG and that Jonathan Guez broadly "exercises management and

3   control" over My Tribe, *id.* ¶¶ 8, 10, Plaintiff alleges nothing to show that either of them directly

4   participated in the alleged infringing conduct, *see generally id.*  The issue is closer with Gabriel

5   Guez, but even those allegations do not suffice.  While it is undisputed that Gabriel Guez personally

6   entered into the agreements with Plaintiff that led to his becoming the Worldwide Master Licensee

7   (by which he could create and market prints and merchandise featuring Plaintiff's artwork), *see*

8   Complaint, ECF No. 1 ¶¶ 27-32, the record also shows that he then formed Brave Arts for the

9   purpose of conducting the business involving the ALMERIANE Mark and products, *see* Gabriel

10  Guez Declaration, ECF No. 10-2 ¶ 9, and that suggests that it is Brave Arts (or other entities that

11  Brave Arts may have contracted with) that solicited and took orders from customers in the Northern

12  District of California that Plaintiff alleges.  Plaintiff alleges that he is an owner of Brave Arts, but

13  this is not enough on it own, and Plaintiff's other allegations do not show that he personally

14  participated in the soliciting and taking of orders of customers in the Northern District of California.

15      To the contrary, the record shows that Brave Arts, IBG, and My Tribe employed several sales

16  agents to solicit and complete sales to customers, thus undercutting the suggestion that, as owners of

17  these entities, the Individual Defendants were the ones who did these acts.  Plaintiff submitted the

18  Declaration of Teri Shearer, who states that she was a sales agent for IBG and, at "IBG's direction,"

19  solicited orders from customers in the Northern District of California.  Shearer Declaration, ECF No.

20  17-2 ¶¶ 3-6.  She states in pertinent part:

21          During my engagement and in furtherance of my duties as a sales agent for IBG, I
            traveled throughout the western United States (including in the Northern District of
22          California) visiting retailers within my territory, to whom I showed samples of, and
            solicited orders for IBG and My Tribe items.  After I received samples for the
23          ALMERIANE line in mid-February 2012, I obtained orders for ALMERIANE items
            from at least six retailers in the Northern District of California: Emily Lee and
24          Channel 910 in San Francisco, New Threads in Corte Madera, Daisy in St. Helena,
            Forget Me Not in Aptos, and Safari in Mendocino.
25

26  *Id.* ¶ 6.  She states that Brave Arts and My Tribe, too, employed sales agents for this same purpose.

27  *Id.* ¶ 3.  While Ms. Shearer's declaration, which does not mention any of the Individual Defendants

28  (except for one immaterial mention of Jean Pierre Guez near the end), surely helps show that Brave

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Arts, IBG, and My Tribe solicited and made sales from customers in the Northern District of

2  California, it does not show that the Individual Defendants did so.

3      Numerous courts have found specific personal jurisdiction lacking where a plaintiff's allegations

4  about individual defendants are so limited. *See Marsh v. Zaazoon Solutions, LLC*, No. C-11-05226

5  YGR, 2012 WL 92226, at *9 (N.D. Cal. Mar. 20, 2012) (ruling that plaintiffs did not meet their

6  burden to show specific personal jurisdiction over individual defendants where plaintiffs' second

7  amended complaint was "devoid of any allegations of a specific act" and instead contained only

8  allegations that the individual defendants were principals and members of the companies that

9  operated the scam at issue and that the individual defendants actively participated in the

10  misconduct); *Clerkin v. MyLife.com, Inc.*, No. C 11-00527 CW, 2011 WL 3607496, at *1-2, 4 (N.D.

11  Cal. Aug. 16, 2011) (ruling that plaintiffs did not meet their burden to show specific personal

12  jurisdiction over an individual defendant who was the corporate defendant's "Vice President of

13  Emerging Business" where plaintiffs' only allegations about him were that he "conspired with"

14  others "to perpetuate" a fraudulent scheme and "personally performed acts" in support of a

15  fraudulent scheme because those allegations "[did] not afford any insight into how [he] controlled or

16  directly participated in the alleged fraudulent scheme"); *Just Film, Inc. v. Merchant Servs., Inc.*, No.

17  C 10-1993 CW, 2010 WL 4923146, at *6 (N.D. Cal. Nov. 29, 2010) (ruling that plaintiffs did not

18  meet their burden to show specific personal jurisdiction over certain individual defendants where

19  plaintiffs alleged only that those individual defendants directed and controlled the entities alleged to

20  have engaged in the wrongful conduct and did not allege how those individual defendants directed

21  or controlled those entities).  And in the cases where courts have found that specific personal

22  jurisdiction exists over individual defendants who are employees of entity defendants, those

23  plaintiffs usually alleged that the individual defendants did specific acts in furtherance of the specific

24  wrongful conduct at issue. *See, e.g., Enriquez v. Interstate Group, LLC*, No. 11-CV-05155 YGR,

25  2012 WL 3800801, at *4 & n.3 (N.D. Cal. Aug. 31, 2012) (court ruled that plaintiffs had met their

26  burden to show specific personal jurisdiction over an individual defendant who was the chief

27  operating officer of the entity defendant accused of violating federal employment law and who was

28  alleged to have promulgated both the policy decision to misclassify store managers as "exempt"

employees and to deny overtime compensation to sales associates, and to have personally fired one plaintiff); *Holliday v. Lifestyle Life, Inc.*, No. C 09-4995 RS, 2010 WL 3910143, at *1, 4 & n.5 (N.D. Cal. Oct. 5, 2010) (court ruled that plaintiffs had met their burden to show specific personal jurisdiction over individual corporate officer defendants where plaintiffs alleged that the individual defendants controlled, or at least were involved in, the creation of the corporate employment policy that denied overtime compensation to all non-exempt schedulers in violation of federal employment law); *Blinglet, Inc. v. Amber Alert Safety Centers, Inc.*, No. C 09-05156 SI, 2010 WL 532388, at *1 (N.D. Cal. Feb. 6, 2010) (court ruled in a breach of contract action that plaintiff had met its burden to show specific personal jurisdiction over an individual defendant who allegedly signed the letter of intent setting forth the terms of the agreement that specified the ownership of copyrighted software developed by both plaintiff and the corporate defendant, represented to investors that the corporate defendant developed the software alone, and took concrete steps to prevent plaintiff from capturing the portion of revenues to which it was contractually entitled).

On this record, the court finds that the Individual Defendants did not purposefully direct activities at the Northern District of California. Plaintiffs did not meet their burden to show that the first prong of the applicable test for specific personal jurisdiction—purposeful direction—over the Individual Defendants was met. Therefore, specific personal jurisdiction does not exist over them.[8] Because the Individual Defendants do not reside and in the Northern District of California and specific personal jurisdiction does not exist over them, the Northern District of California is an improper venue for Plaintiff's copyright infringement claim against them.

### *(ii) The Entity Defendants*

The answer is different with respect to the Brave Arts, IBG, My Tribe, California Apparel, and the Retail Defendants (collectively, the "Entity Defendants"). Once again, to determine whether venue is proper, the court must determine whether the Entity Defendants would be subject to

---

[8] Because the court finds that Plaintiffs did not meet their burden to show that the first prong of the applicable test for specific personal jurisdiction, the court does not reach the second and third prongs of that test. In addition, because the court finds that specific personal jurisdiction does not exist, the court further finds that their contacts certainly are not are "substantial" or "continuous and systematic" and therefore do not support the existence of general personal jurisdiction, either.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  personal jurisdiction in the Norther District of California.  As described above, for specific

2  jurisdiction to exist, (1) the nonresident defendant must purposefully direct his activities at the forum

3  state or purposefully avail himself of the benefits and protections of the laws of the forum state, (2)

4  the claim must be one which arises out of or relates to the defendant's forum-related activities, and

5  (3) the exercise of personal jurisdiction must be reasonable.  *Yahoo!*, 433 F.3d at 1205-1206 (citing

6  *Schwarzenegger*, 374 F.3d at 802).

7      Here, the first prong—purposeful direction—is met because the record supports finding that each

8  of the entity Defendants (1) committed an intentional act, (2) expressly aimed at the forum state, (3)

9  causing harm that the defendant knew was likely to be suffered in the Northern District of

10  California.  Plaintiff alleges that Brave Arts, IBG, and My Tribe solicited and made sales from

11  customers in the Northern District of California, Complaint, ECF No. 1 ¶¶ 3, 7, 9, 34, and Ms.

12  Shearer's declaration supports this allegation.  She describes how she, a sales agent, was directed by

13  IBG to do exactly that, and she further states that Brave Arts and My Tribe employed sales agents

14  for the same purpose.  Shearer Declaration, ECF No. 17-2 ¶¶ 3-6.  Plaintiff also alleges that

15  California Apparel has, without her authorization or consent, developed, manufactured, displayed,

16  promoted, distributed, and sold products bearing her artwork to the Retail Defendants, who then

17  offered the products for sale in the Northern District of California via their websites.  Complaint,

18  ECF No. 1 ¶ 64, Exh. 13.  Plaintiff's allegation in this regard is unchallenged.  *See generally* Motion,

19  ECF No. 17; Reply, ECF No. 20; *see also Mavrix Photo*, 647 F.3d at 1230 (defendant's infringing

20  website "expressly aimed" at California because the defendant "exploit[ed] . . . the California

21  market for its own commercial gain" by selling space on its website for advertisements targeting

22  Californians with the knowledge that its website garnered a substantial viewership in California).

23  Instead, Brave Arts, IBG, My Tribe, and California Apparel argue that their sales to customers in the

24  Northern District of California are too minimal to support personal jurisdiction.  Opposition, ECF

25  No. 10 at 9-10.  But as Plaintiff points out, even a showing of a "modest amount of sales" of an

26  infringing product is enough to support venue.  *See Allstar*, 666 F. Supp. 2d at 1130 (citing *Sutter*

27  *Home Winery, Inc. v. Madrona Vineyards, L.P.*, No. C 05-0587 MHP, 2005 WL 701599, at *4 & n.2

28  (N.D. Cal. Mar. 23, 2005) (Patel, J.))

UNITED STATES DISTRICT COURT
For the Northern District of California

The second prong also is satisfied.  "The second requirement for specific, personal jurisdiction is that the claim asserted in the litigation arises out of the defendant's forum related activities." *Panavision*, 141 F.3d at 1322.  This element is met if Plaintiff would not have been injured "but for" Defendants' alleged intentional acts relating to the Northern District of California.  *See id.*  Here, Plaintiff's copyright claim arises out of the Entity Defendants' solicitation and sale of products featuring her artwork to customers in this District.  "But for" their doing so, Plaintiff's copyrights in her artwork would not have been violated.

Having satisfied her burden on the first and second prongs of the test, the burden shifts to the Entity Defendants to present a "compelling case" that the exercise of specific personal jurisdiction would be unreasonable.  "For jurisdiction to be reasonable, it must comport with fair play and substantial justice."  *Panavision*, 141 F.3d at 1322 (internal quotation marks omitted).  When considering this question, courts consider  seven factors: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.  *Id.* at 1323.

The Entity Defendants fail to meet their burden.  In fact, even though Plaintiff explicitly addressed these factor in her opposition, *see* Opposition, ECF No. 17 at 12-15, the Entity Defendants failed to mention any of them in the motion or reply, *see generally* Motion, ECF No. 10; Reply, ECF No. 20.  In light of their failure to do so, the court need not address these factors.

Accordingly, Plaintiff met her burden to show that the Northern District of California is a proper venue for her copyright infringement claim against the Entity Defendants.

### 2.  28 U.S.C. § 1391(b)(2)

#### (i)  Plaintiff's Claims under the Lanham Act

Plaintiff also brings two claims for violation of the Lanham Act: her second claim is against all defendants for trademark infringement, false designation of origin, and unfair competition in violation of 15 U.S.C. § 1125; and her seventh claim against the Brave Arts defendants is for filing a

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   false federal trademark application in violation of 15 U.S.C. §§ 1119 and 1125.  Complaint, ECF

2   No. 1 ¶¶ 79-85, 112-117.

3       "Venue over trademark claims is governed by the general venue statute, 28 U.S.C. § 1391."

4   *Allstar*, 666 F. Supp. 2d at 1128 (citing *Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F.

5   Supp. 2d 1282, 1286 n.3 (D. Ariz. 2009) ("Because the Lanham Act has no special venue provision,

6   the general venue statute applies.")).  28 U.S.C. § 1391(b) sets forth three bases for proper venue,

7   and Plaintiff acknowledges that 28 U.S.C. § 1391(b)(1) and (b)(3) do not apply here, so the court

8   looks only to 28 U.S.C. § 1391(b)(2).  That provision provides that "[a] civil action may be brought

9   in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim

10  occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. §

11  1391(b)(2).  "In a trademark suit brought under the Lanham Act, a substantial part of the events

12  giving rise to the claims occur in any district where consumers are likely to be confused by the

13  accused goods, whether that occurs solely in one district or in many."  *Allstar*, 666 F. Supp. 2d at

14  1128 (internal quotation marks and citations omitted); *see also Adobe*, 2011 WL 566812, at * 7.  A

15  plaintiff "only need show 'that a substantial number of consumers of [a] plaintiff's [trademarked

16  products] who reside in this district may be confused by [the] defendant's use of the [allegedly

17  infringing] mark.'"  *Id.* (quoting *Sutter Home Winery*, 2005 WL 701599, at *4 n.2).

18      Here, Plaintiff argues that the solicitation of customers in the Northern District of California and

19  sales to of the accused products them satisfy this standard.  Opposition, ECF No. 17 at 16-17.  She

20  specifically points to sales made to "at least six retailers in the Northern District of California: Emily

21  Lee and Channel 910 in San Francisco, New Threads in Corte Madera, Daisy in St. Helena, Forget

22  Me Not in Aptos, and Safari in Mendocino."  Shearer Declaration, ECF No. 17-2 ¶ 6; *see also*

23  Complaint, ECF No. 1 ¶ 34.  Defendants do not appear to contest that these sales occurred[9]; rather,

24  _____

25      [9] In their motion, Defendants state that aside from a single shipment of good to Forget Me
    Note in Aptos, California, no other orders or business has even been conducted by Defendants in the

26  Northern District of California.  Motion, ECF No. 10 at 9 (citing Jean Pierre Guez Declaration, ECF
    No. 10-3 ¶¶ 9-11, Exhs. A, B).  However, after Plaintiffs provided the Shearer Declaration in

27  support of her opposition, Defendants did not address the purported sales to the other customers in
    their reply.  Thus, it appears that Defendants may concede that these additional sales occurred.  Even

28  so, all factual conflicts must be resolved in favor of the non-moving party, and here the non-moving

they state that these sales "hardly constitute 1% of Defendants' combined business dealings in the entire Country," and argue that these sales, therefore, cannot be "substantial" enough to support venue in the Northern District of California.  Motion, ECF No. 10 at 9.  Courts, however, have rejects arguments by defendants that venue is improper under 28 U.S.C. § 1391(b)(2) because only a small percentage of the allegedly infringing wine sales were shipped to this district.  *See Sutter Home Winery*, 2005 WL 701599, at *4 n.2 ("While it is true that defendant's wine is produced in the Eastern District of California and its sales in this district appear to be relatively modest, neither of these facts eliminates the possibility that some potential purchasers of plaintiff's wine who reside in this district may be confused by defendant's use of the 'Mélange de Trois' mark.") (citing *Radical Prods., Inc. v. Sundays Distrib.*, 821 F. Supp. 648, 649–50 (W.D. Wash. 1992) (finding venue over a trademark infringement claim to be proper on the ground that the defendant had mailed brochures describing its product to the district in which action was filed); *Sidco Indus., Inc. v. Wimar Tahoe Corp.*, 768 F. Supp. 1343, 1346–47 (D. Or. 1991) (finding venue proper in Oregon based on the fact any impact on the plaintiff's business that would result from an out-of-state defendant's advertising directed at Oregon consumers was likely to occur in that state); *see also Symantec Corp. v. Johns Creek Software, Inc.*, No. C 11–03146 WHA, 2011 WL 4026873, at *6 (N.D. Cal. Sept. 12, 2011) (finding venue proper for a trademark claim under 28 U.S.C. § 1391(b) in part because approximately five percent of the defendants' sales of the infringing products were made to residents in this District).  As Plaintiff notes, "substantial" does not mean "most."  *See Bates v. C & S Adjusters*, 980 F.2d 865, 867 (2d Cir. 1992) (28 U.S.C. § 1391(b)(2) "does not, as a general matter, require the District Court to determine the best venue").  Because Defendants' sales of the allegedly infringing products to the Northern District of California were "substantial," and because those sales in part give rise to Plaintiff's trademark claims under the Lanham Act, the court finds that the Northern District of California is a proper venue for Plaintiff's second and seventh claims.

### (ii)  Plaintiff's Remaining Claims under State Law

Plaintiff also brings under California law.  Her third and fourth claims, which she brings against

party is Plaintiff.

all Defendants, are for common law trademark infringement and for unfair and fraudulent business practices in violation of the UCL, respectively; her fifth, which she brings against the Brave Arts Defendants and the IBG Defendants, is for fraud and deceit; and her sixth claim, which she brings against the Brave Arts Defendants, is for conversion.  Complaint, ECF No. 1 ¶¶ 86-111.  These claims all arise out of the same transaction and occurrence that gives rise to her trademark and copyright claims.  Because of this close relationship among the claims, venue is proper under the doctrine of "pendent venue."[10]  *See Allstar*, 666 F. Supp. 2d at 1127.

### 3. The Case Should Be Transferred Because Venue Is Improper[11]

Although the court finds that the Northern District of California is a proper venue for Plaintiff's trademark and state law claims against Defendants, it nevertheless finds that this district is an improper venue over Plaintiff's copyright infringement claim against the Individual Defendants.[12]  When venue is improper, it is within the trial court's discretion to dismiss the case or transfer it.  *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district, shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); *District No. 1 Pacific Coast District v. Alaska*, 682 F.2d 797, 799 (9th Cir. 1982); *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789

---

[10] Under this doctrine, which may be applied at the discretion of the court, *Beattie v. United States*, 756 F.2d 91, 103 (D.C. Cir. 1984), "where venue exists for the principal cause of action, courts have agreed to adjudicate closely related claims even if they lacked an independent source of venue." *Allstar*, 666 F. Supp. 2d at 1127; *see also Save Our Cumberland Mountains, Inc. v. Clark*, 725 F.2d 1422, 1431 (D.C. Cir. 1984) ("On occasion, where venue exists for the principal cause of action, courts have agreed to adjudicate closely related claims even if they lacked an independent source of venue.").

[11] Because the court finds that the Northern District of California is not a proper venue for Plaintiff's copyright claim against the Individual Defendants, the court does not reach Defendants' argument in favor of transfer under 28 U.S.C. § 1404(a).

[12] Although no party argues it, the court rejects any argument that it might be able to find venue proper based on a "pendent party venue" theory.  *See* Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL § 4:535 (The Rutter Group 2013) ("Arguably . . . if all claims arise out of the same transaction or occurrence, and venue is proper as to at least one defendant, the court should be able to retain the entire action on a 'pendent party venue' theory. However, there is no known authority so holding.").

UNITED STATES DISTRICT COURT
For the Northern District of California

1    (D.C. Cir. 1983) (citing *Cook v. Fox*, 537 F.2d 370, 371 (9th Cir. 1976)).

2      Here, it is uncontested that the Central District of California is a proper venue for this action in

3    its entirety. *See* Opposition, ECF No. 17 at 17 ("Defendants admit that the Central District [of

4    California] is a viable alternate venue for this case."); Reply, ECF No. 20 at 7 (requesting that the

5    court "dismiss or transfer this action to the Central District of California, the proper venue under 28

6    U.S.C. §§ 1391(b) [and] 1400(a)").  "Normally transfer will be in the interest of justice because

7    normally dismissal of an action that could be brought elsewhere is 'time-consuming and

8    justice-defeating.'" *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) (quoting *Goldlawr, Inc.*

9    *v. Heiman*, 369 U.S. 463, 467 (1962) (transfer under the venue statute 28 U.S.C. § 1406)); *see also*

10   Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL § 4:577 (The

11   Rutter Group 2013) ("Normally, if there is another district or division in which the action could have

12   been brought, transfer is preferred to the harsh remedy of dismissal.  Transfer avoids any statute of

13   limitations problems and the necessity of filing and serving a new action.") (citing *Minnette v. Time*

14   *Warner*, 997 F.2d 1023, 1026-27 (2d Cir. 1993)).  Because the Central District of California is a

15   proper venue for this action in its entirety, the court transfers the action to that district.

16   **B. Transfer also Is Appropriate under 28 U.S.C. § 1404(a)**

17      Although the court rules that venue is improper and the action must be transferred for that

18   reason, it also rules that the action must be transferred for the convenience of the parties and in the

19   interests of justice.

20      As stated above, it is Defendants' burden to show that transfer is appropriate. *Commodity*

21   *Futures Trading Commission*, 611 F.2d at 279.  They have.  First, the parties agree that this action

22   could have been brought in the Central District of California. *See* Opposition, ECF No. 17 at 17;

23   Reply, ECF No. 20 at 7.

24      Second, transfer serves the convenience of the parties.  On one side, there is Plaintiff, who

25   resides in Spain and who does not argue that it is more difficult (whether financially or otherwise)

26   for her to litigate in Los Angeles than in San Francisco.  She suggests that she will face increased

27   litigation costs should be forced to litigate in the Central District of California because her attorneys

28   are based in the Northern District of California, but she provides no authority implying or holding

UNITED STATES DISTRICT COURT
For the Northern District of California

that this is a relevant consideration here.[13]  On the other side are Defendants, the majority of whom are individuals residing or entities which have their principal places of business in or around Los Angeles.  In such a situation, the court believes that it is more convenient for the parties, on the whole, to litigate this action in the Central District of California.

Third, transfer will promote the interests of justice.  Indeed, the factors specifically identified by the Ninth Circuit support transferring this action to the Central District of California.  *See Jones*, 211 F.3d at 498–99.  As for the factors bearing upon the relationship between Plaintiff's action and the Central District: the parties negotiated and executed the agreements that pertain to this action in Spain and Los Angeles; the parties have just as many, if not more, contacts with the Central District as they do with this District; Defendants' sold the allegedly infringing goods in both Districts, and so there are contacts relating to Plaintiff's claims in both places; Defendants have identified several non-party witnesses who reside in the Los Angeles area and may be subject to subpoena there; and much of the relevant proof will be found where Defendants are located.  The factors relating to the courts also favor transfer: judges in the Central District is as familiar with the governing law as judges in this District are; Plaintiff's choice of forum is given less weight where, as here, she commenced an action in a forum in which she does not reside, *see Piper Aircraft*, 454 U.S. at 255-56; and the costs of litigation should be similar given the availability of technology that makes it easier to do things remotely, *see CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 106, 1080 (9th Cir. 2011) ("With the advances in transportation and telecommunications and the increasing interstate practice of law, any burden of litigation in a forum other than one's residence is substantially less than in days past.") (internal citations, quotation marks, and alterations omitted).  The court also notes that, although Plaintiff has not yet been served yet, the Brave Arts Defendants' action against her already has been instituted in Los Angeles.

---

[13] Plaintiff does cite *Brackett v. Hilton Hotels Corp.*, but in that opinion, while Judge Alsup did recognize that the parties' relative financial ability is a relevant consideration, he said nothing about attorney fees incurred due to travel.  *See* 619 F. Supp. 2d at 820.  *Cf.* Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL § 4:751 (The Rutter Group 2013) (convenience of counsel is not a factor to be considered when ruling upon a discretionary transfer request).

1    Accordingly, the court finds that, even if venue in this District was proper, transfer to the Central

2  District of California would be appropriate under 28 U.S.C. § 1404(a).

                                    **CONCLUSION**

3

4    Based on the foregoing, the court **GRANTS** Defendants' motion and **TRANSFERS** this action

5  to the Central District of California.

6    **IT IS SO ORDERED.**

7  Dated: August 5, 2013                    _____

8                                           LAUREL BEELER
                                            United States Magistrate Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California